174 So.2d 315

**STATE of Alabama**

v.

**AIR CONDITIONING ENGINEERS, INC.**

**1 Div. 194.**

Supreme Court of Alabama.

April 15, 1965.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Jr., Asst. Attys. Gen., for the State.

Vickers, Riis, Murray & Curran, Mobile, for appellee.

HARWOOD, Justice.

■ The sole question involved in this review is whether an air conditioning contractor must pay a sales tax only upon the value of the sheet metal he uses in constructing a completed air conditioning duct system, or is the tax to be computed upon the value of the parts and components in their changed state after the contractor has bent, crimped, and partially shaped the sheet metal as component parts of the finished duct system, which partially finished parts are later taken to the job site where they are further shaped, bent, fitted, and connected into the finished duct system which is affixed to realty.

Section 786(2) (m) of Title 51, Code of Alabama 1940, (Sales Tax Statutes) provides:

"The use within this state of tangible personal property by the manufacturer thereof, as building materials, in the performance of a construction contract, shall, for the purposes of this article be considered as a retail sale thereof by such manufacturer, who shall also be construed as the ultimate consumer of such materials or property, and who shall be required to report such transaction and pay the sales tax thereon, based upon the reasonable and fair market price thereof at the time and place where same are used or consumed by him or it. The provisions of this subsection shall not apply to any tangible personal property which is specifically exempted from the tax levied in this article; * * *."

The lower court found that the appellee, Air Conditioning Engineers, Inc., in such process "is not a manufacturer within the meaning of said statute," (Sec. 786(2) (m), supra, "in that it does not manufacture a finished product the reasonable value of which can be ascertained, but that appellant" (appellee here) "in fact is a contractor using building materials in the performance of a construction contract, which building materials are taxable to appellant" (appellee here) "at the cost price to it under Title 51, Section 786(2) (j), and therefore the court is of the opinion that the assessment of the additional sales tax cannot be sustained."

Section 786(2) (j), supra, in parts pertinent to this review provides:

"Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in what ever quantity sold. * * * The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale * * * except property which enters into and becomes an ingredient or component part of tangible personal property or products *manufactured or compounded for sale* and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon." (Emphasis ours.)

In the proceedings below J. H. Hastie, President of the appellee company testified that the appellee company is the sub-contractor for the installation of air conditioning duct systems, and as such it is charged with the responsibility of making a complete installation of a duct system in a particular building. An architect prepares the general contract drawings, as well as a mechanical consultant. These plans are for a specific duct system. From these drawings the appellee makes up shop drawings for the metal that would be applicable. The appellee's shop then takes these drawings and will form, in the shop, certain portions of the duct system. The duct system cannot be made in the shop because it could not be assembled there. When these parts go to the job they are in various forms and shapes, "either knocked down, not seamed together, sometimes they are round, sometimes they are welded together." When these parts arrive on the job, in pieces, they are put together. Frequently they fit, and quite frequently they do not. If they do not fit, they have to be reshaped and trimmed. Quite frequently they have to be thrown away.

Where standard lengths of ducts are available on the open market, it is economically advisable to buy such standard shapes, and this is done when feasible. The parts which are prepared in the shop are those which are made according to the specifications of the particular job and are not standard due to the peculiarities of the specifications.

The items produced in the shop are not finished products, and there are no retail sales made of these items. Where, due to human error, a component of a certain duct system does not fit, it is good for nothing except the trash pile and is thrown away.

Mr. Hastie further testified that the method of partially preparing the component parts such as is done by the appellee, is known in the air conditioning contracting business as fabricating rather than manufacturing.

The application of taxing statutes must be bottomed upon, and considered in the light of each particular situation, bearing in mind that in case of doubt a tax law should be liberally construed in favor of the taxpayer. Montgomery Aviation Co. v. State, 275 Ala. 266, 154 So.2d 24.

Counsel for the state have set forth in their brief a large number of definitions of the word "manufacture" taken from the cases from which the definition is quoted. These may be found in 26 Words and Phrases, and we see no need to quote these definitions in extenso. The term "manufacture" in its broadest sense implies any change wrought by hand. Such a broad implication serves no useful purpose in a solution of the present question. In taxation statutes the word "manufacture" is generally given a narrower meaning. Armature Exchange v. United States, D.C., 28 F.Supp. 10, and several of the definitions of "manufacture" assert that the transformation into a new form must be such as the new article has a "distinctive name, character, or use" (Charles Marchand Co. v. Higgins, D.C., 36 F.Supp. 792; City of Louisville v. Ewing Von-Allmen Dairy Co., 268 Ky. 652, 105 S.W.2d 801) or "into a suitable form for use" (Cullom v. Stevens, D.C., 46 F.Supp. 73).

Counsel for the respective parties have cited, excerpted, and argued many authorities to sustain their respective contentions that the objects prepared by the appellee were or were not "manufactured." We see no need to resort to these decisions however, for in our opinion the clear language and import of the language of the statutes is fully supportive of the conclusions reached by the court below.

The evidence shows without dispute that the partially fabricated components of a

specific air conditioning duct system have no use or value in their individual state, and are useful only when integrated into a completed duct system and affixed to realty. The appellee is not manufacturing a finished product saleable on the market and having any market value. The sheet metal used by the appellee in partially fashioning these component parts and upon which the appellee has paid all sales taxes due, is "used and consumed" in such operation at this juncture.

The evidence further shows that the appellee is a contractor who purchases and pays a sales tax upon sheet metal for use in affixing it to real estate. Section 786(2) (j), supra, is clear that such withdrawal and use of the sheet metal constitutes the retail sale, with the sales tax being determined upon the value of the sheet metal at the time of this retail sale.

It is also to be noted that the Department of Revenue has promulgated certain Rules and Regulations implementing Sections 786(2) (j) and 786(2) (m), supra.

These rules are entirely too long to set out in full in this opinion, and we therefore will set forth only those provisions material to this review.

The Rule on Building Materials, implementing Section 786(2) (j) in part provides:

"Building materials when purchased by builders, contractors, or landowners for use in adding to, repairing, or altering real property are subject to either the sales or use tax *at the time of purchase by such builder, contractor, or landowner.* 'Building materials' as used in the Sales or Use Tax Laws includes any material used in making repairs, alterations, or additions to real property." (Emphasis ours.)

\* \* \* \* \* \*

"The term 'building materials' includes such tangible personal property

as lumber, \* \* \* air conditioning systems \* \* \* and any and all other tangible personal property which becomes a part of real property."

The Rule and Regulation (B 27–081) implementing Section 786(2) (m) in part provides:

*"Building Materials Manufactured by Contractor*

"Section 1(m) provides that the use of building materials in the performance of a contract by the person who manufactures them is equivalent to making a retail sale of such materials and that such use must be reported by such person as subject to sales tax to be measured by the reasonable and fair market value at the time and place where used.

\* \* \* \* \* \*

"Section 1(m) applies to metal awnings (A23–012), metal car ports, and other similar permanently attached additions to buildings when the components are prefabricated at the shop, plant, or mill of the contractor. This subsection does not apply when the materials are cut and fitted on the job site for attachment as construction progresses. Examples of materials not coming within the provisions of Section 1(m) are siding, roofing, flooring, inside trim, except where the contractor is the manufacturer from raw materials of such siding, roofing, flooring."

It is clear under these rules that one manufacturing a standard finished product, and who as a contractor installs such finished product is liable for a sales tax on the value of the completed and finished product. The examples set forth in the rule of metal awnings, car ports, etc., which are completely finished and standard items, represent the ideas of the Revenue

Department, and distinguish such products completely from items only partially fabricated, and entirely unusable until integrated into a completed whole, and usable product, in this case a completed air duct system.

It appears that the above mentioned Rules and Regulations, promulgated by the Department of Revenue can only be rationally considered as reinforcing the correctness of the trial court's conclusions.

The appellant argues that because the appellee kept no record as to the market value of the partially fabricated components of the air duct system, the appellee should suffer the penalty of non-compliance in the matter of keeping such tax records, a burden placed upon the taxpayer by Section 786(8), Title 51, Code of Alabama 1940.

Mr. Wayne L. Long, a Revenue Examiner for the State Revenue Department, and who audited and examined appellee's records, testified that the records kept by the appellee were excellent, except in their failure to show the market value of the component parts of the air duct system in their partially completed state.

■ Since these parts are not to be considered as "manufactured" and since under the undisputed evidence these parts are useless until they become a part of a completed air duct system, and in their individual state have no market value, there was no duty on the part of the appellee to reflect a non-existent market value on such items in its records.

The decree of the lower court is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.