240 So.2d 358

Harvey L. RABREN, as Commissioner of
Revenue of the State of Alabama,

v.

UNITED STATES STEEL CORPORATION.

3 Div. 391, 391–A.

Supreme Court of Alabama.

Oct. 22, 1970.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen. Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue and Asst. Atty. Gen., for appellant.

Thomas, Taliaferro, Forman, Burr & Murray, and A. J. Noble, Jr., and Robert G. Tate, Birmingham, for appellee.

762, Acts of Alabama 1965, Reg.Sess., page 1372.

■ The pleadings present an issue as to the application of Section 786(2) (j), (m) of Title 51, Recompiled Code of Alabama 1958, 1969 Cum. Pocket Part (Act No. 100, Acts of Alabama 1959, Vol. 1, p. 298) to the operations of appellee in the use of structural steel it employed in erecting bridges and buildings under contract and in some instances that it furnished another contractor. We quote the pertinent parts of these subsections as follows:

"(j) * * * Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold. * * * The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon. * * *"

"(m) The use within this state of tangible personal property by the manufacturer or compounder thereof, as building materials, in the performance of a construction contract, shall, for the purposes of this article be considered as a retail sale thereof by such manufacturer, or compounder, who shall also be construed as the ultimate consumer of such materials or property, and who shall be required to report such trans-

## PER CURIAM.

Appellant, Harvey L. Rabren, as Commissioner of Revenue of the State of Alabama, brings this appeal from a declaratory judgment of the Circuit Court of Montgomery County, wherein the court held that appellee was entitled to a refund of sales tax paid to the State of Alabama during the period from September 1, 1962 through May 31, 1965, but without interest.

Appellant's eight assignments of error, although referring to eight distinct facets of the judgment, collectively challenge the judgment ordering the refund, supra. Appellee contends by proper assignment of error that the trial court erred in denying interest on the refund. It cites Act No.

action and pay the sales tax thereon, based upon the reasonable and fair market price thereof at the time and place where same are used or consumed by him or it. * * *"

It appears from the evidence, little of which is controverted by either party, that American Bridge Company is a division of appellee, but is not a separate corporate entity. It is a part of appellee with a division name. It has its own accounting system that reflects its purchases from appellee and the costs of its own operations. No money passes for such purchases.

We think it is clear from the evidence that appellee manufactures standard structural steel by the use of effective processes and proper raw materials. This standard steel is stockpiled and made available to the American Bridge Division in its program of commercial activities.

These activities are mainly, if not exclusively, confined to the erection of bridges and steel framing for buildings; and occasionally it furnishes the required steel for erection of buildings and for bridges to other contractors for like use. Freeing this opinion from too much detail, the evidence clearly shows that the American Bridge Division tailors this structural steel to meet certain architectural specifications pertinent to a particular project and in no sense are the tailored components a standard finished product. This tailored steel is without value except as scrap if not suitable for use in accordance with the specifications for the particular project. The tailoring is done by bending, shearing, drilling, bolting, welding and riveting the structural steel into a completed whole pursuant to specifications.

We think the evidence also plainly shows that the processing by the American Bridge Division is basically the same as those fabrications by appellee in the case of State of Alabama v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315. There is a factual difference in the weight and types of metal required by the instant appellee and by the Air Conditioning Engineers, Inc. The latter required sheet metal and the former required heavy structural steel. The fabricating operations are essentially the same. Of pertinent interest is the case of State of Alabama v. Charles F. Acker, 45 Ala.App. 574, 233 So.2d 514, decided by the Court of Civil Appeals, citing the *Air Conditioning Engineers,* supra.

We see no use in repeating here the pertinent pronouncements appearing in the above two cases, but suffice it to say that our pronouncements in the *Air Conditioning Engineers, Inc.,* case, with like pertinency in the *Acker* case, are decisive of the issues in appellant's assignments of errors. We adhere to these pronouncements despite the renewal here of challenges which seek a modification.

We do not think it makes any difference if appellee manufactured the structural steel and then turned it over to the American Bridge Division for fabrication to meet specifications for a particular use or project. The steel is fabricated regardless of who does the fabricating.

The tax involved in this refund is referred to in the judgment of the trial court which we quote:

"It is, therefore, ORDERED, ADJUDGED, DECREED and DECLARED by the Court as follows:

"(1) That the tangible personal property which plaintiff manufactures and uses as building materials in the performance of its construction contracts is structural steel and steel plates.

"(2) That when plaintiff fabricates structural steel and steel plates it is not manufacturing within the meaning of subsection (m) of Section 1(1) of Act No. 100, Second Special Session of the Legislature of Alabama, 1959, approved August 18, 1959, as amended (Section 786(2) (m), Title 51, Code of Alabama).

"(3) That as to structural steel and steel plates manufactured by plaintiff and fabricated and erected by its American Bridge Division in the performance of construction contracts in this State, plaintiff is liable under said subsection (m) for sales taxes measured by the commercial price of such steel at the time it is used in the fabricating shop.

"(4) That as to structural steel and steel plates manufactured by others and purchased by plaintiff and fabricated and erected by its American Bridge Division in the performance of construction contracts in this State, plaintiff is liable under subsection (j) of Section 1 (1) of said Act No. 100, as amended (Section 786(2) (j), Title 51, Code of Alabama), for sales taxes measured by the purchase price paid by it for such steel.

"(5) That plaintiff is entitled to a refund in the amount of $52,881.46 of sales tax paid by plaintiff's predecessor, United States Steel Corporation, a New Jersey Corporation, during the period from September 1, 1962 through May 31, 1965.

"(6) That plaintiff is not entitled to interest on said sum of $52,881.46 under the provisions of Act No. 762, approved September 1, 1965, Acts of Alabama, 1965 Regular Session, Page 1372, said Act applying only to overpayments of sales tax made on or after October 1, 1965.

"(7) That the costs of this proceeding be and the same hereby are taxed against the defendant."

The overpayment of sales tax here involved was made prior to October 1, 1965, the effective date of the Act No. 762, supra, mandating the payment of interest.

We think and so hold that the above statutory mandate for the payment of interest has no application to the overpayment here under consideration. The Act operates prospectively from the effective date of October 1, 1965 and not before. Appellee's cross-assignment of error is without merit.

The judgment of the trial court is affirmed.

Affirmed.

MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.