This case involves the application of the sales tax to a manufacturer which installs its products outside Alabama. The circuit court and the Court of Civil Appeals, 455 So.2d 846, upheld an assessment of state and county sales taxes against petitioner, Disco Aluminum Products Company, Inc. Disco petitioned this Court for a writ of certiorari. Two companies which have been subjected to tax assessments similar to that against Disco have filed amicus briefs.
The facts are set out in the opinion of the Court of Civil Appeals. Briefly, we reiterate that Disco purchases aluminum, glass, and other materials to fabricate custom-designed windows and doors for the parties with whom it contracts. In a small percentage of cases, Disco contracts to install or supervise the installation of its products. These are the transactions which the State deems taxable.
Disco and the amici construct elaborate arguments around various provisions of the sales tax act to demonstrate that the instant transactions should not be taxed; the State makes similar arguments to establish the contrary proposition. The source of the conflict is the definition section, Code 1975, §40-23-1, which includes provisions to which Disco refers as the contractor provision, the manufacturer provision, the withdrawal provision, and the manufacturer/contractor provision.
The contractor provision defines "[s]ales of building materials to contractors [and] builders . . . for use in the form of real estate" as retail sales. Id., § 40-23-1 (a)(10), third sentence. The manufacturer provision defines sales of tangible personal property or products to manufacturers "which are used or consumed by them in manufacturing . . . or compounding and do not become an ingredient or component part of the tangible personal property manufactured or compounded" as retail sales. Id., sixth sentence. Neither of these provisions is applicable to the transactions at hand, but they are pertinent as part of the scheme of taxation against wholesale purchasers and they apply in some of the cases discussed below.
The State taxed Disco under the withdrawal provision:
 "The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon."
Code 1975, § 40-23-1 (a)(10), seventh sentence (emphasis added). The state contends that Disco's use of the aluminum and glass which it buys at wholesale is a withdrawal for the personal use of fulfilling its personal obligations under "furnish and install" contracts.
Disco counters that a withdrawal must be "personal and
private," and that the legislature added the withdrawal provision *Page 851 
to reach instances in which retailers take goods off the shelf for their own use rather than selling them. Disco and the amici insist that the definition properly applicable to the transactions at hand is the manufacturer/contractor provision:
 "The use within this state of tangible personal property by the manufacturer thereof, as building materials in the performance of a construction contract, shall, for the purposes of this division, be considered as a retail sale thereof by such manufactuer, who shall also be construed as the ultimate consumer of such materials or property, and who shall be required to report such transaction and pay the sales tax thereon, based upon the reasonable and fair market price thereof at the time and place where same are used or consumed by him or it."
Code 1975, § 40-23-1 (b). Because the materials in question are used outside the state, their use would not be taxable if they properly fall within this definition.
The State takes the position that the manufacturer/contractor provision applies only to manufacturers who both manufacture a "standard finished product" for wholesale and use some of their product in construction contracts. Because Disco only manufactures custom windows and doors to fill specific orders, says the State, this definition is not applicable here.
The State's position is a reasonable interpretation of certain decisions of the appellate courts of this state applying these sales tax definitions. The "standard finished product" gloss on the manufacturer/contractor provision arises from State v. Air Conditioning Engineers, Inc., 277 Ala. 674,174 So.2d 315 (1965), and State v. Acker, 45 Ala. App. 574,233 So.2d 514 (1970).
Air Conditioning Engineers (ACE) challenged an assessment under this provision against sheet metal ductwork used in installations of air conditioning systems. The State taxed the value of the finished ductwork under the manufacturer/contractor provision; ACE contended that only the value of the sheet metal was taxable under the withdrawal provision. The Court agreed with ACE, holding that ACE used and consumed the sheet metal in fashioning the duct system. In refuting the State's argument, the Court said, "[O]ne manufacturing a standard finished product, and who as a contractor installs such finished product is liable for a sales tax on the value of the completed and finished product." AirConditioning Engineers, supra, 277 Ala. at 678, 174 So.2d 315.
In State v. Acker, supra, the Court of Civil Appeals applied the reasoning in Air Conditioning Engineers to hold that a cabinet maker who built custom, but not standard, cabinets, was not a manufacturer/contractor and therefore only had to pay tax on the value of materials used under the contractor (not the withdrawal) provision.
The decision in Air Conditioning Engineers was proper and reasonable: the ductwork had no intrinsic value but only had value as part of a completed air conditioning system. The Court of Civil Appeals in Acker took the reasoning one step further: even though the cabinets had value as such, they were held not to be taxable as finished products because they would be scrapped if not properly built to fit the intended installation. This too, was a reasonable interpretation of the sales tax statute, because Acker was a contractor. In the instant case, the Court of Civil Appeals accepted the State's argument that because Disco's products have very little value if ill-designed or -built for the intended use, Disco is not a manufacturer/contractor.
It will be noted that in Air Conditioning Engineers the Court applied the withdrawal provision to a manufacturing-type withdrawal at the taxpayer's insistence. Other than this instance, the withdrawal provision was long applied only to cases in which there was no transfer of title to another.
In State v. Helburn Co., 269 Ala. 164, 111 So.2d 912 (1959), the State sought to tax, under the withdrawal provision, sales by Helburn of air conditioning equipment to the state and federal governments. *Page 852 
Sales to the government entities were not taxable as retail sales, so the State sought to tax Helburn's withdrawal from inventory. The Court, in affirming a finding that no sales tax was due, observed:
 "[The withdrawal provision] has not been considered by the State Department of Revenue to be necessary to the collection of sales taxes on equipment furnished and installed under similar contracts with private individuals. That Department, prior to the time that [the withdrawal provision] became a part of our Sales Tax Law, considered such contracts with private individuals to encompass an ordinary sale of the equipment furnished and installed and has permitted the dealer to pass the tax on to the buyer whereas [the withdrawal provision] provides that the taxes due thereunder are to be paid by the party who purchases at wholesale. And there has been no change of policy in regard to transactions with private individuals since the adoption of [the withdrawal provision]."
Id., 269 Ala. at 166, 111 So.2d at 913-14 (emphasis added).
The observation that the State at one time did not deem the withdrawal provision to apply to situations where the manufacturer or wholesale purchaser transferred title is reinforced by the fact that the State did not contend in Hammv. Continental Gin Co., 276 Ala. 611, 165 So.2d 392 (1964), that the withdrawal provision applied. In that case, the State merely contended that the sales of gins installed in South Carolina were closed transactions within Alabama and thus were taxable retail sales.
In State v. T.R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185
(1961), the Court held that the State properly assessed taxes under the withdrawal provision against a lumber mill for withdrawals of its lumber from inventory to use in repairs, improvements, and maintenance of its own facilities. In Statev. Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740
(1965), the Court held that the leasing of machines manufactured by Kershaw constituted a taxable withdrawal, noting that Kershaw manufactured the machines for a profit, whether by sale or lease. In State v. Barnes, 45 Ala. App. 522,233 So.2d 83 (1970), the Court of Civil Appeals held that the withdrawal of phonograph records from stock to place in jukeboxes constituted a withdrawal. But in Drennen Motor Co. v.State, 279 Ala. 383, 185 So.2d 405 (1966), the Court held that designation of cars as demonstrators did not constitute withdrawals, because the cars were available for sale at all times and sold for an average of four and one-half percent less than new cars not used as demonstrators.
In each of these cases the state sought to impose tax on a withdrawal where no transfer of title took place. Later cases, however, established a pattern of applying the withdrawal provision where manufacturers transferred their products. InRabren v. United States Steel Corp., 286 Ala. 394,240 So.2d 358 (1970), the Court cited Air Conditioning Engineers, supra, and Acker, supra, in affirming that the use of structural steel in bridge construction was a taxable withdrawal "measured by the purchase price paid by [U.S. Steel] for such steel."286 Ala. at 397, 240 So.2d at 361. Rabren involved both the manufacturer/contractor and the withdrawal provisions, discussed standard steel and custom-fabricated steel, and taxed both manufactured and purchased steel; therefore, it is less than crystal clear as a precedent for applying the withdrawal provision to items transferred by the taxpayer to another.
The withdrawal provision was first applied to an objecting taxpayer who transferred the goods to another in AlabamaPrecast Products, Inc. v. Boswell, 357 So.2d 985 (Ala. 1978). Alabama Precast manufactured roof slabs both for sale at retail and for use in "furnish and install" contracts. The State sought to tax, under the withdrawal provision, the value of the raw materials used to manufacture roof slabs for a contract under which Alabama Precast was to furnish and install roof slabs on a building in South Carolina. The parties agreed that the withdrawal provision *Page 853 
was the only statute applicable to the facts of the case, and thus the Court did not consider whether the manufacturer/contractor provision was more germane to the transactions. In one sense, of course, the latter provision did not apply, because it relates only to use of property within the state. In another sense, however, the manufacturer/contractor provision might have been deemed to apply, had Alabama Precast so argued, to the extent that Alabama Precast's operations were of the type governed by that provision.
The Court in Alabama Precast upheld the finding of the Court of Civil Appeals that the transactions were taxable, on the basis that "[t]he raw materials [were] withdrawn . . . [and]used by Alabama Precast Products in the performance of apersonal obligation under the construction subcontract." Id., 357 So.2d at 988 (emphasis in original). Thus, the courts established not only the application of the withdrawal provision to goods transferred to others, but also the concept that the requirement that withdrawals must be for "personal and private use" included the "personal obligation" of a "furnish and install" contract. This result also obtained in Home Tileand Equipment Co. v. State, 362 So.2d 236 (Ala.Civ.App.), cert. denied, 362 So.2d 239 (Ala. 1978).
The legislature signaled its disapproval of these interpretations of the withdrawal provision by passing Act No. 83-720, 1983 Ala. Acts 1167, effective during the pendency of this appeal. The Act amends several of the definitions in Code 1975, § 40-23-1, chiefly relating to the very issue at hand. The withdrawal provision of § 40-23-1 (a)(10) is amended to read, with new material emphasized:
 "The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the State of Alabama; and such wholesale purchaser shall report and pay the taxes thereon."
The Act also states that it "does not constitute a change in, but is declaratory of, the pre-existing law." Courts must consider subsequent acts passed by the legislature to clarify previously ambiguous provisions. McWhorter v. State Board ofRegistration for Professional Engineers and Land Surveyors exrel. Baxley, 359 So.2d 769 (Ala. 1978).
Moreover, this change does indeed appear consistent with the intent of the legislature which originally passed the withdrawal provision. Disco has ably set out the background and legislative history of the withdrawal provision. In 1945, the Commissioner of Revenue sought to promulgate a regulation to the effect that diversions to personal use or consumption by a retailer were sales for sales tax purposes. The Commissioner requested an opinion from the Attorney General as to whether this regulation would be consistent with the sales tax laws. The Attorney General responded that a diversion to personal use was not within the definition of "sale" contained in the sales tax statutes because there was no transfer to a buyer. 38Reports of the Attorney General 37 (1945). To the alternative question of what the Commissioner could do about such diversions, the Attorney General answered *Page 854 
that any such action would be a legislative matter. Id.
In 1947 the legislature passed House Bill 70 as an amendment to the sales tax definitions now found at Code 1975, § 40-23-1. Act No. 305, 1947 Ala. Acts p. 160. The bill originally would have defined as retail sales all use or consumption of personal property purchased at wholesale. House Journal 1947, pp. 748-750. The bill was amended to delete that change but to add instead the sentence quoted at the beginning of this opinion as the withdrawal provision. The net effect of the change in the bill was to except property on which a sales tax has already been paid or which becomes part of property manufactured or compounded for sale rather than being used for the personal and private use or consumption of the person purchasing the property. Id., pp. 940-942.
As can be seen from the history of the withdrawal provision, the original legislative intent was consistent with the clarifying amendment of Act No. 83-720 and the position taken by Disco and the amici. Because this intent was inconsistent with the position taken by the State herein and accepted by the courts below, that position is not in accordance with the statute being applied. The decision of the Court of Civil Appeals must therefore be reversed and the cause remanded.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES and ADAMS, JJ., concur.
FAULKNER and BEATTY, JJ., dissent.
TORBERT, C.J., and EMBRY, J., not sitting.