507 So.2d 515 (1987)
Ex parte The DOTHAN PROGRESS.
(Re The DOTHAN PROGRESS, et al. v. STATE of Alabama DEPARTMENT OF REVENUE).
85-790.
Supreme Court of Alabama.
February 20, 1987.
Rehearing Denied March 27, 1987.
Richard F. Allen of Capell, Howard, Knabe & Cobbs, Montgomery, for petitioners.
Charles A. Graddick, Atty. Gen., and B. Frank Loeb, Chief Counsel, and Charles E. Crumbley, Asst. Counsel, Revenue Dept., and Asst. Attys. Gen., for respondent.
Prior report: Ala.Civ.App. 507 So.2d 511.
PER CURIAM.
Reversed on the authority of Ex parte: Morrison Food Service of Alabama, Inc., 497 So.2d 136 (Ala.1986), and Ex parte: Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984).
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
BEATTY, J., dissents with opinion in which JONES, J., concurs.
STEAGALL, J., dissents with opinion.
BEATTY, Justice (dissenting).
The majority relies on Ex parte Morrison Food Service, 497 So.2d 136 (Ala.1986), and Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), in summarily reversing the decision of the Court of Civil Appeals in this case. However, I not only find the facts of the present case to be distinguishable from those which existed in both Ex parte Morrison Food Service and Ex parte Disco Aluminum Products Co., but also find the holding in each of those cases to be inapposite to the present case.
In Ex parte Disco Aluminum Products Co., it was held by a majority of this Court that the use of aluminum, glass, and other materials purchased at wholesale and used in the fabrication of custom-designed windows and doors to fulfill contractual obligations to install or supervise the installation of these products was not taxable under the withdrawal provision of the sales tax statutes. Code of 1975, § 40-23-1(a)(10). The majority in Ex parte Disco Aluminum Products Co. reasoned that "property on which a sales tax has already been paid or which becomes part of property manufactured or compounded for sale rather than being used for the personal and private use or consumption of the person purchasing the property [at wholesale]" is excepted from the withdrawal provisions of the sales tax statutes. (Emphasis added.) 455 So.2d at 854.
In Ex parte Morrison Food Service, a majority of this Court held that food purchased at wholesale and used to fulfill obligations under contracts to operate food service programs for several hospitals, nursing homes, and fraternities was also not taxable under the withdrawal provision. 497 So.2d at 141-42. In so holding, however, the Court took care to point out that it was not overruling the decision in State v. Morrison Cafeterias Consolidated, 487 So.2d 898 (Ala.1985).
In Morrison Cafeterias Consolidated, this Court had held that the withdrawal from inventory of food that had been purchased at wholesale for use in providing meals to employees as part of a compensation plan was taxable under the withdrawal provision. As the Court explained in Ex parte Morrison Food Service:
"The difference between the present case and Morrison Cafeterias is that here, title to the goods was transferred when the institutions with whom Morrison had contracted paid Morrison for the food. In Morrison Cafeterias, the employees paid nothing for the food. Therefore Morrison Cafeterias withdrew the food for its own purposes, that of *516 supplying its employees with free food, and was subject to the withdrawal provision for this use of the food."
(Emphasis added.) 497 So.2d at 141.
In this case, The Dothan Progress withdrew from its inventory ink and newsprint that had been purchased at wholesale to use in printing newspapers which it distributed for free. Nothing was paid for these newspapers.
Clearly, the rule in Ex parte Disco Aluminum Products Co. does not apply, as these newspapers are not "manufactured or compounded for sale" as were the materials sold under contract in that case. The newspapers are simply never sold. The problem arises in attempting to apply the principles in Ex parte Morrison Food Service and Morrison Cafeterias Consolidated to the case at bar.
At first blush, the key to applying these cases appears to be in determining "whether title to the goods withdrawn has been transferred to another." However, a closer examination reveals that the mere "transferral of title" is not determinative. Although this Court seems to imply in the passage from Ex parte Morrison Food Service, quoted above, that title to the food in Morrison Cafeterias Consolidated was never transferred, this is clearly not the case. The food in Morrison Cafeterias Consolidated was, at some point, transferred to the taxpayer's employees. The employees ate the food. Logically, then, there must be some other factor that was actually determinative of the different results in Ex parte Morrison Food Service and Morrison Cafeterias Consolidated. The actual difference is that in Ex parte Morrison Food Service the persons to whom the food was transferred "paid" for the food, whereas in Morrison Cafeterias Consolidated the persons to whom the food was transferred "paid nothing for the food." This difference is made clear by both the emphasized language in the passage from Ex parte Morrison Food Service quoted above and the following passage set out in that same case:
"We are of the opinion that title to the food was transferred from Morrison at some point as though the food had been purchased from Morrison. Although in the fraternity contracts there were provisions that title to the food held on-site would remain in Morrison, there were other provisions in the fraternity contracts which stated that the amount to be reimbursed for the food would be determined by a monthly food inventory. We hold, therefore, that, based upon the manner in which the contracts with the fraternities and the other institutions were performed, it is implicit that title to the raw food, or at least to the meals, passed from Morrison to others at some point. Clearly, under each contract, the raw food or the prepared meals were consumed by persons other than ... employees of Morrison, and we think this makes a material difference, as we shall now show."
(Emphasis added.) 497 So.2d at 141.
In the present case, title to the newspapers is transferred, at some point, when the newspapers are distributed. However, no payment is ever made for them. Therefore, it is clear that no payment is ever made for the ink and newsprint that are used to manufacture these newspapers. Neither is there in existence some contractual obligation to a third party for which payment is made in return for the transfer of the ink and newsprint here in question. That being the case, it is clear that this case, rather than being controlled by the decision in Ex parte Morrison Food Service, should be controlled by our decision in Morrison Cafeterias Consolidated.
I would affirm the judgment of the Court of Civil Appeals.
STEAGALL, Justice (dissenting).
I respectfully dissent, based upon the reasoning set forth in my dissent in Ex parte Morrison Food Service of Alabama, Inc., 497 So.2d 136, 142 (Ala.1986). In Ex parte Morrison Food Service, I said Morrison's withdrawal of food from inventory was not a transfer of title, but was instead incidental to providing a service to its customers and, therefore, was taxable. In the present case, I feel that the withdrawal of *517 ink and newsprint from inventory is not a transfer of title either, but is incidental to the printing of newspapers, which are distributed free of charge. Accordingly, the withdrawal of ink and newsprint from inventory constitutes a taxable withdrawal.
I would affirm the judgment of the Court of Civil Appeals.