ADAMS, Justice.
Following an audit of the company that publishes the newspaper The Dothan Progress, the Department of Revenue assessed the company (hereinafter referred to as “the Dothan Progress”), a licensed retailer, unpaid taxes for the period of October 1, 1986, through April 30, 1989, on ink and newsprint purchased tax-free at wholesale and taken from inventory and used in assembling three newspapers that were distributed to the public free of charge. After paying the assessed taxes, the Dothan Progress filed for a refund, which was denied by the Department. Pursuant to a petition for a writ of mandamus filed by the Dothan Progress, the circuit court determined that the Dothan Progress was entitled to a refund; the Department of Revenue appealed that decision to the Court of Civil Appeals, which affirmed the decision of the circuit court. 605 So.2d 1217. We have granted the Department’s petition for certiorari review.
*1222 This case involves the “withdrawal for use” provisions of § 40-23-l(a)(6) and (10), Code of Alabama (1975). The Department of Revenue concedes that this Court considered this exact fact situation involving the same parties in 1987 (see Dothan Progress v. State Department of Revenue, 507 So.2d 511 (Ala.1986), reversed and remanded, Ex parte Dothan Progress, 507 So.2d 515 (Ala.1987). The Department of Revenue contends, however, that the opinion in Ex parte Dothan Progress, 507 So.2d 515 (Ala.1987), was based on the legislature’s amendment in 1983 to the definition of “sale at retail” in § 40-23-l(a)(10). That amendment added “without transfer of title” to the definition. The legislature, in 1986, again amended § 40-23-l(a)(10), and took out the “without transfer of title” language. The Department contends that the definition did not remain the same both with and without the “without transfer of title” language, and the Department argues that the effect of the 1986 amendment changes the result reached in our earlier opinion. We agree.
Although the result of our previous opinion turned on the interpretation of the 1983 amendment, the facts, as set out by the Court of Civil Appeals at 507 So.2d 511, are identical to the facts in the present case:
“[The Dothan Progress] operates a printing business, which prints and distributes three Alabama newspapers. While a small portion of the subscribers of two of these newspapers pay for their subscriptions, the vast majority of subscribers do not pay anything. In other words, [the Dothan Progress] distributes most of the newspapers for free.
“The papers which [the Dothan Progress] ‘gives away’ to most of its readers or subscribers are printed by [the Dothan Progress], using ink and newsprint withdrawn from its inventory or stock, which is purchased at wholesale. The Department claims that it is [the Dothan Progress’s] withdrawing and using its ink and newsprint from inventory purchased at wholesale to produce the papers which give rise to sales tax under the withdrawal or ‘self-consuming’ provisions of Ala.Code (1975), § 40-23-l(a).”
Dothan Progress v. State Department of Revenue, 507 So.2d 511, 513 (Ala.1986), reversed and remanded, Ex parte Dothan Progress, 507 So.2d 515 (Ala.1987).
This Court, in Ex parte Campbell & Associates, Inc., 544 So.2d 971 (Ala.1989), quoting Ex parte Morrison Food Service of Alabama, 497 So.2d 136 (Ala.1986),[1] set out the history of the “withdrawal provision,” as follows:
“The original sales tax law did not contain any withdrawal provisions. The concept first surfaced in 1945 in 38 Op. Att’y Gen. 37 (1945), when the Commissioner of Revenue requested an attorney general’s opinion as to whether or not the commissioner had authority to issue the following regulation:
“ ‘SALES TAX REGULATION NO. 20
“ ‘Where a licensed retail dealer in Alabama purchases tangible personal property for resale but diverts a portion thereof to his own personal use or consumption, without resale, such use or consumption may be determined, at the option of the State Department of Revenue, to be a sale of such property at the regular retail price thereof and such dealer may be required to report such diversion on forms furnished by the State Department of Revenue, as all other retail sales are reported, and to pay the taxes thereon in the same manner as if such property had been sold at retail. (Emphasis added [in Campbell & Associates ].)’
“The Attorney General responded that the Commissioner of Revenue had no au *1223 thority to promulgate such a regulation, stating:
“ ‘In view of the definition of the term “sale” set out above, it is my opinion that the personal use or consumption by a licensed retail dealer of part of the tangible personal property purchased by him at wholesale, presumably for resale, is not a sale of such tangible personal property within the meaning of the sales tax statutes, and for this reason is not a part of the “gross proceeds of sales” of such licensed retail dealer and is not subject to sales tax.’
"38 Op. Att’y Gen. at 40-41. The Attorney General did, however, suggest legislation to correct the abuse. 38 Op. Att’y Gen. at 41.
“In 1947, the House voted to amend the sales tax law as follows:
“ ‘Said term, “gross proceeds of sale” shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
“ ‘Said term “gross receipts” shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
“ ‘The term “sale at retail” or “retail sale” shall also mean and include the withdrawal, use or consumption of any tangible personal property by any one who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon.’
“1947 House Journal, Reg.Sess., 940-42.
“These provisions were enacted. See Ala. Acts 1947, Act No. 305, § l(l)(f), (h), and (j), at 160, 161-62.
“The withdrawal provisions were enacted solely to fill a void not theretofore covered by any existing provision of the *1224 Alabama Sales Tax Law, that is, to tax a person who purchased goods at wholesale for the purpose of reselling and who withdrew some of these goods for his own personal and private use or consumption, without transfer of title.
“In Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), this court discussed the subsequent history of the withdrawal provision, as follows:
“ ‘The observation that the State at one time did not deem the withdrawal provision to apply to situations where the manufacturer or wholesale purchaser transferred title is reinforced by the fact that the State did not contend in Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392 (1964), that the withdrawal provision applied. In that case, the State merely contended that the sales of gins installed in South Carolina were closed transactions within Alabama and thus were taxable retail sales.
“ 'In State v. T.R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185 (1961), the Court held that the State properly assessed taxes under the withdrawal provision against a lumber mill for withdrawals of its lumber from inventory to use in repairs, improvements and maintenance of its own facilities. In State v. Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740 (1962), the court held that the leasing of machines manufactured by Kershaw constituted a taxable withdrawal, noting that Ker-shaw manufactured the machines for a profit, whether by sale or lease. In State v. Barnes, 45 Ala.App. 522, 233 So.2d 83 (1970), the Court of Civil Appeals held that the withdrawal of phonograph records from stock to place in jukeboxes constituted a withdrawal. But in Drennen Motor Co. v. State, 279 Ala. 383, 185 So.2d 405 (1966), the Court held that designation of cars as demonstrators did not constitute withdrawals, because the cars were available for sale at all times and sold for an average of four and one-half percent less than new cars not used as demonstrators.
“ ‘In each of these cases the state sought to impose tax on a withdrawal where no transfer of title took place. Later cases, however, established a pattern of applying the withdrawal provision where manufacturers transferred their products. In Rabren v. United States Steel Corp., 286 Ala. 394, 240 So.2d 358 (1970), the Court cited [State v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315 (1965), and State v. Acker, 45 Ala.App. 574, 233 So.2d 514 (1970)], in affirming that the use of structural steel in bridge construction was a taxable withdrawal “measured by the purchase price paid by [U.S. Steel] for such steel.” 286 Ala. at 397, 240 So.2d at 361. Rabren involved both the manufacturer/contractor and the withdrawal provisions, discussed standard steel and custom fabricated steel, and taxed both manufactured and purchased steel; therefore it is less than crystal clear as precedent for applying the withdrawal provision to items transferred by the taxpayer to another.
“ ‘The withdrawal provision was first applied to an objecting taxpayer who transferred the goods to another in Alabama Precast Products, Inc. v. Boswell, 357 So.2d 985 (Ala.1978). Alabama Precast manufactured roof slabs both for sale at retail and for use in “furnish and install” contracts. The State sought to tax, under the withdrawal provision, the value of the raw materials used to manufacture roof slabs for a contract under which Alabama Precast was to furnish and install roof slabs on a building in South Carolina. The parties agreed that the withdrawal provision was the only statute applicable to the facts of the case, and thus the Court did not consider whether the manufacturer/contractor provision was more germane to the transactions. In one sense, of course, the latter provision did not apply, because it relates only to use of property [within] the state. In another sense, however, the manufacturer/contractor *1225 provision might have been deemed to apply, had Alabama Precast so argued, to the extent that Alabama Precast’s operations were of the type governed by that provision.
“ ‘The Court in Alabama Precast upheld the finding of the Court of Civil Appeals that the transactions were taxable, on the basis that “[t]he raw materials [were] withdrawn ... [and] used by Alabama Precast Products in the performance of a personal obligation under the construction subcontract.” Id., 357 So.2d at 988 (emphasis in original). Thus, the courts established not only the application of the withdrawal provision to goods transferred to others, but also the concept that the requirement that withdrawals must be for “personal and private use” included the “personal obligation” of a “furnish and install” contract. This result also obtained in Home Tile and Equipment Co. v. State, 362 So.2d 236 (Ala.Civ.App.), cert. denied, 362 So.2d 239 (Ala.1978).
“ ‘The legislature signaled its disapproval of these interpretations of the withdrawal provision by passing Act. No. 83-720, 1983 Ala. Acts 1167, effective during the pendency of this appeal. The Act amends several of the definitions in Code 1975, § 40-23-1, chiefly relating to the very issue at hand. The withdrawal provision of § 40-23-l(a)(10) is amended to read, with new material emphasized:
“ ‘The term “sale at retail” or “retail sale” shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the State of Alabama; and such wholesale purchaser shall report and pay the taxes thereon.’ ”
“ ‘The Act also states that it “does not constitute a change in, but is declaratory of, the pre-existing law.” Courts must consider subsequent acts passed by the legislature to clarify previously ambiguous provisions. McWhorter v. State Board of Registration for Professional Engineers and Land Surveyors ex rel. Baxley, 359 So.2d 769 (Ala.1978).’
“Ex parte Disco Aluminum Products Co., Inc., 455 So.2d at 852-53.
“ ‘Thus, we held that in light of the legislature’s amendment of § 40-23-l(a)(10), Alabama Precast must be overruled insofar as it held that the withdrawal provision could be applied to situations in which title to the goods withdrawn is transferred to another, as is true here.’
“497 So.2d at 137-40.
“When Morrison was released, the Legislature was meeting in special session. It deleted from the definitional section of § 40-23-l(a)(10) the phrase ‘without transfer of title,’ apparently at the urging of the Department because of its belief that this Court had incorrectly interpreted the law in Morrison.”
Ex parte Campbell, supra, at 974-77.
Although this Court gave a detailed history of the “withdrawal provision” in Ex parte Campbell, we did not address the opinion of the Court of Civil Appeals in that case, wherein it was specifically stated as follows:
“Upon examination of the statute and in view of the above, it becomes apparent *1226 that the legislature intended the Act to do away with the interpretations of the withdrawal provision subsequent to 1983. Therefore, it appears to this court that the thrust of this 1986 amendment is to do away with the interpretation of the withdrawal provision contained in Morrison. In view of this determination, we find that the trial court had no alternative but to deny the taxpayer’s motion. The clear intent of the 1986 amendment did away with the Morrison interpretation, and, therefore, Morrison was no longer valid authority for the granting of taxpayers’ Rule 60(b) [A.R.Civ.P.] motion.”
White v. Campbell & Associates, Inc., 544 So.2d 969, 971. (Ala.Civ.App.1988).
Judge Russell, in an opinion concurring in the result reached by the Court of Civil Appeals in the case before us, stated:
“I concur only in the result reached by the majority; however, I base my concurrence on the well-settled rule that where there is reasonable doubt as to the construction and meaning of a revenue statute, the doubt is to be resolved in favor of the taxpayer and against the taxing authority. Misener Marine Construction, Inc. v. Eagerton, 423 So.2d 161 (Ala.1982).
“I do not subscribe completely to the majority’s reasoning because I would find that the circuit court’s determination that the ‘legislative intent with regard to Section 40-23-1 ... has remained the same since 1947’ ignores both the Alabama legislature’s intent in 1986 in dropping the words ‘without transfer of title’ from § 40-23-l(a)(10) and the expression of legislative disapproval — found in the language of Act No. 86-869, Ala. Acts 1986 — of judicial interpretations of the statute after the 1983 amendment and prior to 1986. I also find that the court’s reliance on Ex parte Morrison apparently does not account for the judicial interpretations of the withdrawal provision of § 40-23-l(a)(10) that followed the 1986 amendment, particularly our supreme court’s opinion in Ex parte Campbell & Associates, Inc., 544 So.2d 971 (Ala. 1989), which seeks to clarify Morrison as it relates to transfer of title to goods withdrawn for personal use by a taxpayer.
“In 1983 the withdrawal provision of § 40-23-l(a)(10) was amended to ‘remove ambiguity’ from the definitions of ‘sale at retail or retail sale’ as they appear in the statute. See Act No. 83-270, Ala. Acts 1983. The obvious significance of the 1983 amendment was the addition of language excepting from taxation certain out-of-state ‘furnish and install’ contracts (see e.g., Ex parte Disco Aluminum Products, Co., 455 So.2d 849 (Ala.1984)) and the addition of the words ‘without transfer of title’ following the language in the statute that pertains to goods withdrawn from inventory for personal use by a taxpayer. When determining the applicability of the withdrawal provision in the wake of this amendment, our courts began to scrutinize whether title to a taxpayer’s goods had at some point passed to another party. In 1986 in Morrison our supreme court held that an objecting taxpayer who withdrew food from inventory to fulfill obligations under food-service contracts was not subject to sales tax under the withdrawal provision because the taxpayer had ‘passed title’ to the food to other parties.
“The legislature was apparently displeased with the ramifications of the Morrison decision, because just after the release of the case in 1986, it amended § 40-23-l(a)(10). The 1986 amendment has one noticeable deletion from the statute: the language ‘without transfer of title’ (which had been added in 1983) is no longer part of the withdrawal provision. The title to Act No. 86-689 reads, in pertinent part, as follows:
“ ‘The intent of this bill is to repeal the 1983 amendment of these definitions so as to replace the repealed definitions with the preexisting definition of these terms; and it is further intended that no provision of this bill is to be construed or interpreted in any manner inconsistent with the preexisting body of interpretive materials, poli- *1227 cíes, and court decisions as in existence prior to the 1983 amendment.’ ”
Sizemore v. Dothan Progress, 605 So.2d 1217 (Ala.Civ.App.1991) (Russell, J., concurring in the result).
We agree that the law with regard to the withdrawal provision is unclear, and we now attempt to clarify the purpose of the 1986 amendment. Because of the confusion of the law in this area, we do so, however, without penalizing the taxpayer in this instance. Therefore, the interpretation of the law in this case is prospective only, and the taxpayer in this case is entitled to its refund from the Department of Revenue.
Having examined the statute both with the 1983 amendment and with the 1986 amendment and in light of the language in the title to the 1986 amendment, we conclude that the legislature could not have been merely reiterating the law as it existed in 1983 without meaning to change the interpretations given to the 1983 amendment. The title to Act 86-689 stated:
“The intent of this bill is to repeal the 1983 amendment of these definitions so as to replace the repealed definitions with the preexisting definition of these terms; and it is further intended that no provision of this bill is to be construed or interpreted in any manner inconsistent with the preexisting body of interpretive materials, policies, and court decisions as in existence prior to the 1983 amendment.”
Even if the legislature was under the impression in 1983 when that amendment was passed (and evidently it was) that the 1983 amendment merely clarified the law as it was in 1947, the passage of the 1986 amendment clearly indicates that the legislature felt that after 1983, there had been a departure from the pre-1983 law and that it sought to remedy the situation by passing the 1986 amendment. There can be no other explanation. Why else would the legislature bother to add language to the 1986 amendment clearly disavowing the 1983 amendment?
In reaching this conclusion, we hold that the transfer of title is no longer a pivotal factor upon which we base our decision as to whether the withdrawal provisions apply. In the present case, the Do-than Progress withdrew ink and newsprint from stock and used it to print newspapers. Those newspapers were distributed free of charge. Obviously, title to the newspapers was transferred upon their distribution. If a fee had been charged for the papers, there is no dispute that the charge for the tax would be passed on to the purchasers thereof. Here, however, the papers were given to the public, for the most part, free of charge. Why? The obvious reason is that the Dothan Progress had contracted with advertisers to distribute to the general public newspapers containing advertisements. In other words, the Dothan Progress consumed the ink and newsprint to meet its own obligations to its advertisers.
The fact that the newspapers were given away no longer exempts the Dothan Progress from paying taxes on the ink and newsprint used to assemble the free newspapers. The legislature, with the passage of the 1986 amendment, signaled to this Court that the interpretations of the 1983 amendment can no longer be used to interpret cases arising after passage of the 1986 amendment.
For the foregoing reasons, the judgment of the Court of Civil Appeals ordering the refund in this case is affirmed; but as to similar situations arising in the future, the law to be applied should be that set out in this opinion.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs in part and dissents in part.

. In Ex parte Morrison, this Court held that Morrison Cafeteria, which was taking some of its food purchased at wholesale and using it to meet food contracts with nine hospitals, nursing homes, and fraternities, was not obligated to pay sales tax thereon. In Ex parte Morrison, this Court stated that "when the taxpayer transfers title to the goods which have been withdrawn, he cannot be taxed under the withdrawal provision.” Ex parte Morrison, at 141. This Court found that title did pass at some point and that Morrison, therefore, did not owe sales tax.