233 So.2d 83

**STATE of Alabama**

v.

**J. L. BARNES, d/b/a Barnes Music Co.**

**2 Div. 1.**

Court of Civil Appeals of Alabama.

March 11, 1970.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and B. Frank Loeb, Asst. Atty. Gen., for the State.

---

J. Garrison Thompson and McLean Pitts, Selma, for appellee.

THAGARD, Presiding Judge.

This case originated with an appeal by appellee-Barnes (appellant below) from a final assessment of sales tax made by appellant-State of Alabama (appellee below).

On February 16, 1966, appellee filed a bill of complaint in which it sought to have the court below set aside and cancel the final assessments entered by appellant.

The case was tried and the lower court entered a final decree holding appellant's assessment to be invalid to the extent of $1,823.91, and setting the same aside as illegal, excessive and void. It is from this

decree of the lower court that appellant appeals.

The appellee, J. L. Barnes, an individual d/b/a Barnes Music Co., is engaged in the business of selling both new and used records and is also engaged in operating coin-operated record players in Dallas County, Alabama, and surrounding counties in central Alabama. Barnes Music Co. maintains a place of business in the City of Selma and at that place of business carries an inventory of records purchased at wholesale from various record manufacturers or distributors. Barnes Music sells new records from this record stock at its place of business in Selma at retail prices. Sales tax due the State of Alabama is collected and paid on all such retail sales.

Barnes Music, in the operation and maintenance of its coin-operated record players, takes records at random from its stock of records on its shelves in Selma and places them in these coin-operated machines. The records in all the machines are periodically changed and the used records are placed back on the shelves of Barnes Music Co. These used records are kept separate and apart from the new records and are sold at various retail prices ranging from 25 cents a piece and lower, depending on the length of time they have remained in stock, the popularity of the particular record and other factors affecting the sale of these records. Sales tax is collected on the sale of these used records when they are sold.

While the records are in the coin-operated machines, they produce an income and Barnes Music Co. pays a gross receipts tax on all sums derived from these coin-operated machines. Barnes Music Co. pays sales tax on all coin-operated machines purchased by the company, and pays a sales tax on all component parts that are used in maintenance of the machines.

The issue presented by this case is as follows:

Does the removal of records owned by taxpayer from his stock of goods to be placed in coin-operated record players, also owned by taxpayer, constitute a retail sale within the meaning of the Alabama Sales Tax Act?

The appellant argues that the removal of these records constitutes a retail sale and, therefore, comes within the confines of Title 51, § 786(2) (j), 1940 Code of Alabama (Recomp.1958) [1967 Cumulative Pocket Part] which reads, in pertinent part, as follows:

"The term 'sale at retail' or 'retail sale' shall mean all sales of tangible personal property except those above defined as wholesale sales. The quantities of goods sold or prices at which sold, are immaterial in determining whether or not a sale is at retail. * * * The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, * * *; and such wholesale purchaser shall report and pay the taxes thereon * * *."

The court in State v. T. R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185, set forth their opinion as to the purpose of Title 51, § 786(2) (j), supra, as follows:

"In our opinion, Subdivision (j) was amended to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale but no sale by him to another. * * *" (272 Ala. at page 138, 130 So.2d at page 188)

Both the appellant and appellee have relied on Drennen Motor Co. v. State of Alabama, 279 Ala. 383, 185 So.2d 405, which dealt with the subject of "withdrawal." In that case, the State of Alabama was trying to place automobiles designated and used by the company as demonstrators in the category of tangible personal property which had been withdrawn or used. The court in Drennen, supra, said:

"We are persuaded that the designation and use of the automobiles as dem-

onstrators, as shown by the testimony in this case, was not such a withdrawal and use as makes the withdrawal or the use, or both together, a taxable event.

\*    \*    \*    \*    \*    \*

"We are not persuaded that the language of the statute expresses an intention to tax, prior to the sale, the use of a piece of merchandise as a demonstrator when the merchandise remains in stock, is available at all times for sale, is used only to promote selling, and is, in every case without exception, sold, and the average selling price is approximately four and one-half per cent less than the average selling price of new merchandise which has not been used as a demonstrator." (279 Ala. at page 389, 185 So.2d at page 411)

In the case at bar, the records placed on the coin-operated machines were not available for sale at all times. They could be purchased only after having been removed from the machines and designated as used records. When the records were removed from taxpayer's stock and placed on the machines there was a withdrawal as covered by Title 51, § 786(2) (j), supra. The records would never be placed in stock as new, but would eventually be classified and sold as used records.

We do not think the fact that the prices of the used records sold were 75% and more below the prices of new records has any bearing whatsoever in this case. There is no guarantee that a demonstrator will not remain in an automobile dealer's stock for such a period or length of time that its price will have to be drastically reduced in order to sell it. Based on the court's opinion in *Drennen,* supra, the price a demonstrator sells for does not determine whether or not there has been withdrawal which subjects the company to the assessment of the tax.

If Barnes Music Co. had removed records from its stock to be played in its place of business only, we think the ruling in *Drennen,* supra, would govern. There would be a strong presumption that these records were demonstrators being played to encourage the customer to buy a copy of said record from taxpayer's stock.

The appellee's basic argument deals with the imposition of double and even triple taxation if this assessment is upheld. As the court stated in *Drennen,* supra:

"'The presumption is against the intention of the legislature to impose double taxation on the same property. 61 C.J. sec. 71,—and prevails unless overcome by the express words of the statute. Any construction of a taxing statute which results in the taxation of the same property twice is to be avoided if possible and never to be adopted unless necessary to affect the manifest purpose of the legislature. (Citations Omitted.)' Paramount-Richards Theatres v. State, 256 Ala. 515, 529, 55 So.2d 812, 824." (279 Ala. at page 389, 185 So.2d at page 411)

But in Starlite Lanes, Inc. v. State, 283 Ala. 48, 214 So.2d 324, the court stated the following:

"Although it is the general rule in this state that double taxation will be avoided, if possible, such taxation is permissible and not unconstitutional unless such double taxation is confiscatory, discriminatory, or results in an unreasonable pyramiding of taxes. (Citations omitted)

"Also, it is always presumed that the legislature did not do a vain and useless thing and that a statute should be construed in accordance with its real intent and meaning, and not so as to defeat the legislative purpose. (Citations omitted)

\*    \*    \*    \*    \*    \*

"It should also be noted that the burden of the 'gross receipts' tax does not fall upon the appellant, as this tax is required by law to be added to the total gross receipts and passed on to the cus-

tomers of appellant. Thus, the burden of the sales tax falls upon the appellant when he buys the shoes and the 'gross receipts' tax upon the appellant's customers when they rent the shoes. Although there is double taxation in the sense that two taxes have been paid on the same item, the two taxes do not fall upon the same person. We do not feel that this is objectionable in the present case." (214 So.2d at pages 326 and 327)

In this case if appellee is required to pay the tax as assessed he will not be subject to double or triple taxation, as argued by appellee, because under the law he is required to collect the gross receipts tax from the patrons of the juke boxes and the sales tax on the sale of the used records from the purchasers, so we think the foregoing quotes from Starlite Lanes, Inc., supra, are apropos.

We analogize the factual situation in this case to that in the case of a retail tire dealer who operates service and delivery trucks and who, as they are needed, takes tires from inventory and mounts them on his trucks, where they are used until almost worn out, then removes them and sells them at their depreciated value, upon which he collects and remits the sales tax. While in use on his trucks the tires would not be in inventory and not available for sale. We have no doubt that under Title 51, § 786(2) (j) the tax would have become due on their withdrawal for use, and it matters not how long they may have been used or how much or how little they may have deteriorated in value.

Appellant's four assignments of error were so related that he chose to argue them together. Their thrust was that the lower court erred in his interpretation of the law in this case. We think all four assignments are good: The judgment of the lower court is reversed and rendered.

Reversed and rendered.