437 So.2d 530 (1983)
ARA HOSPITAL FOOD MANAGEMENT, INC.
v.
STATE of Alabama.
Civ. 3433.
Court of Civil Appeals of Alabama.
February 2, 1983.
Rehearing Denied March 9, 1983.
Certiorari Quashed September 23, 1983.
*531 Thomas N. Carruthers, Jr. and Carleta A. Roberts of Bradley, Arant, Rose & White, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Herbert I. Burson, Jr., Chief Counsel, State Dept. of Revenue and Asst. Atty. Gen., and John H. Burgess, Asst. Counsel Dept. of Revenue and Asst. Atty. Gen., for appellee.
Alabama Supreme Court 82-597.
WRIGHT, Presiding Judge.
This is a sales tax case. Appellant, ARA Hospital Food Management, Inc. (ARA), appeals the circuit court's judgment upholding a final sales tax assessment with penalties and interest in the amount of $78,339.39 made against ARA by appellee, State of Alabama Department of Revenue (State).
The facts are stipulated, and the trial court based its ruling on those stipulations. On review by this court from a trial court's finding based on stipulated facts, a question of law is presented. This court will review the case without presumption favorable to the judgment of the court below. Stiles v. Brown, 380 So.2d 792 (Ala. 1980).
ARA entered into two separate "food service agreements" with the University of South Alabama Medical Center (USA) and with Brookwood Medical Center (Brookwood). Under these agreements, ARA is required to manage and supervise the hospitals' dietary departments, which prepare and serve food to patients, employees, and authorized visitors. Under both agreements ARA is responsible for all direct costs of operation, including food and labor. ARA, operating within the hospitals' facilities, would purchase foodstuffs and produce meals provided to the hospitals to be served to the hospitals' patients. The principal difference between the two contracts is in the manner of compensation: under the USA contract, ARA is compensated on a "per patient day" rate; under the Brookwood contract, ARA is compensated on a "cost-plus" basis.
An assessment of sales tax, pursuant to § 40-23-2, Code of Alabama 1975 (Supp. 1982), was made against ARA by the State with respect to purchases made by ARA from third parties of foodstuffs used in the preparation of meals under these contracts. Section 40-23-2 imposes a sales tax upon anyone "selling at retail any tangible personal property whatsoever." Section 40-23-1(a)(10), Code of Alabama 1975 (Supp. 1982), defines "sale at retail or retail sale" as including:
"the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale ... except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same...."
The first issue raised on appeal is whether ARA made tax exempt retail sales of meals to the hospitals or whether ARA used or consumed the food in the performance of a service contract. The State contends that ARA used or consumed food purchased at wholesale in the performance of its contracts with USA and Brookwood and is therefore liable for sales tax on that food. ARA contends that it made retail sales of meals under those contracts to USA and Brookwood and that those sales are tax exempt under § 40-23-4(15) and Sales and Use Tax Rule No. H15-021, Hospitals, respectively.
*532 Although USA is a public hospital and Brookwood is a private hospital, the two contracts will be addressed together, as that difference does not affect our interpretation of the contracts.
The trial court found:
"After reviewing the contracts and other evidence presented, the Court is of the opinion that the Department's position is correct and that the assessment of tax was properly made as it regards the operations at the University of South Alabama Hospital. Viewing the contract in its totality, it is clear to the Court that ARA was engaged in providing a service to the hospital. As an incidental part of that service, ARA withdrew food previously purchased at wholesale, and used the food in providing meals to the hospital's patients. Such a withdrawal by a wholesale purchaser is defined as a retail sale by the sales tax law, Code of Alabama 1975, § 40-23-1(a)(10). This section imposes the sales tax on the withdrawerin this case, on ARA."
We agree, and find that the court's reasoning applies equally as well to the Brookwood Contract. In Alabama Precast Products, Inc. v. Boswell, 357 So.2d 981 (Ala.Civ. App.1977), aff'd 357 So.2d 985 (Ala.1978), the Supreme Court of Alabama addressed a similar situation. Alabama Precast Products, Inc. (APP), entered into a contract whereby it was to furnish and install roof slabs which it was to manufacture especially for a building under construction in South Carolina. APP was furnished drawings and specifications for the job. The roof slabs were manufactured with raw materials withdrawn from APP's inventory which had been purchased at wholesale. The State of Alabama assessed sales tax against APP, pursuant to § 40-23-2, on the raw materials as a "withdrawal, use or consumption." APP contended that the compounding of raw materials to form the roof slabs was not a withdrawal "because the materials became an ingredient of tangible personal property or products manufactured for sale to another." 357 So.2d at 987. APP contended that its contract was "in effect, two contracts in onea contract to sell the roof slabs ... and a contract to supply services for installation...." Id. Chief Justice Torbert, in affirming the judgment of this court, found:
"[T]here was no `sale' to another of the roof slabs by Alabama Precast Products under the requirements of its subcontract with Daniel Construction Company within the meaning of the provision ... that excepts from the definition of `retail sale' property which enters into and becomes an ingredient or component part of tangible personal property manufactured for `sale.'
"In this case, the roof slabs were manufactured especially for the building under construction in Graniteville, South Carolina, according to the drawings and specifications prepared by Daniel Construction Company. The raw materials withdrawn from the inventory of Alabama Precast Products therefore became ingredients or component parts of tangible personal property used by Alabama Precast Products in the performance of a personal obligation under the construction subcontract. Thus the transaction qualified as a taxable `retail sale' under section [40-23-1]. Alabama Precast Products was the ultimate consumer of the raw materials and as such was liable for the tax thereon."
357 So.2d at 987-88.
The situation in the present case is analogous to that in Alabama Precast. The food was prepared according to specifications made a part of food service agreements. It became ingredients or component parts in the performance of a personal obligation under those agreements. ARA was the ultimate consumer of the food and is therefore liable for tax thereon.
ARA contends that the trial court improperly ruled that Sales and Use Tax Rule No. H15-021, Hospitals, does not apply. According to Rule H15-021:
"Hospitals, infirmaries, sanitariums and like institutions are primarily engaged in the business of rendering services. They are not liable for sales tax with respect to *533 their gross receipts from meals, bandages, dressings, drugs, X-ray photographs or other tangible personal property when such items of tangible property are used in the rendering of a hospital service. This is true irrespective of whether or not such tangible items are billed separately to their patients. Hospitals, infirmaries, and sanitariums are deemed to be the purchasers for use or consumption of such tangible personal property, and the sellers of these items to hospitals, infirmaries or sanitariums are required to collect the tax on sales of such property to hospitals.
"When hospitals furnish meals to nurses, attendants and patients as a part of the service rendered, the hospitals are deemed to be the users or consumers of the food and beverages used in the preparation of these meals."
As can be seen from the plain language of the rule, H15-021 was intended to apply where the hospital purchases meals or foodstuffs. There was no such purchase in this case. The hospitals purchased no tangible personal property; they purchased a service. As the trial court correctly found: "Here, the contractor has undertaken the [hospitals'] responsibility to provide patient food service and stands in the shoes of the [hospitals] under Regulation H15-021 as the consumer of the food and not as a seller of meals."
ARA contends, in the alternative, that, as regards the USA contract, it was acting as an agent of USA and that purchases made were exempt as being made by an educational institution pursuant to § 40-23-4(15), Code 1975 (Supp.1982). Although a discussion of this point is not really necessary in light of our previous discussion, we affirm and adopt the trial court's ruling:
"[F]rom reviewing the contractual arrangement between ARA and the University, it is clear to the Court that ARA is not an agent of the University sufficient to exempt purchases by ARA from sales tax. The contract shows that ARA placed orders with food vendors in its own name and paid for such purchases with its own funds. The University exercised no control over the selection of vendors, and prices to be paid or the time and manner of payment. There was no showing that any vendors were even made aware that the purchases were intended to be used at the University Hospital. To invoke the government's immunity from taxation, the `agent' must be more than a contractor providing services for a government agency; it must be `so assimilated by the Government as to become one of its constituent parts.' United States v. New Mexico, [455 U.S. 720] 102 S.Ct. 1373, 1383 [71 L.Ed.2d 580] (1982)."
Finally, ARA contends that public policy considerations support a reversal of the trial court's judgment. The USA contract states: "In the event additional taxes not contemplated are due and payable, the per patient day rate will be increased on a dollar for dollar basis." We recognize that the intention of Rule No. H15-021 was to save the hospital from such an expense, and we are not eager to pass such an expense on to already overburdened hospital patients. Yet we are bound by the law. If the legislature desires a different result, it is the proper branch of government to change the law.
The judgment of the trial court is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.

ON REHEARING
WRIGHT, Presiding Judge.
On application for rehearing, ARA contends that this court failed to consider its contention that the respective hospitals purchased foodstuffs from ARA before those foodstuffs were compounded into meals, and that since those sales would be tax exempt under Alabama law, no tax is due. The contention is premised on the fact that according to the terms of both contracts involved in this appeal, title to foodstuffs purchased by ARA was to remain in the respective hospitals at all times. ARA contends *534 that this fact distinguishes the present case from Alabama Precast Products, Inc. v. Boswell, 357 So.2d 981 (Ala.Civ. App.1977), aff'd, 357 So.2d 985 (Ala.1978), relied on in our opinion, where the materials used in performance of the service contract were withdrawn from Alabama Precast's inventory because the foodstuffs involved herein were actually inventory of the hospitals and not of ARA.
A similar argument was brought forward in Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615 (1941). In that case, the contract provided that the contractor (King & Boozer) would furnish labor, materials, tools, machinery, equipment, facilities, etc., and that in consideration thereof the United States government would pay a fixed fee and reimburse them for specified expenses. The contract also provided that title to those materials for which the contractors were entitled to be reimbursed would vest in the government upon delivery at the work site.
The government contended that it was the purchaser of the materials and that it was immune from taxation. The court said:
"The taxing statute, as the Alabama courts have held, makes the `purchaser' liable for the tax to the seller who is required `to add to the sales price' the amount of the tax and collect it when the sales price is collected, whether the sale is for cash or on credit. Who, in any particular transaction like the present, is a `purchaser' within the meaning of the statute, is a question of state law on which only the Supreme Court of Alabama can speak with final authority. But it seems plain, as the government concedes and as we assume for present purposes, that under the provisions of the statute the purchaser of tangible goods who is subjected to the tax measured by the sales price is the person who orders and pays for them when the sale is for cash or who is legally obligated to pay for them if the sale is on credit."
Id. 314 U.S. at 9-10, 62 S.Ct. at 45-56.
King & Boozer deals mainly with the question of governmental immunity and contains a great deal of language about what constitutes an agent of the government. As such, it is in support of the trial court's ruling on ARA's agency argument. But it also stands for the proposition that the purchaser of goods, for tax purposes, is the one who orders and pays for them. In the present case, that is ARA. In order to avoid taxation on the theory that title passed at the moment of purchase, ARA would have to establish that it acted as an agent of the hospitals, and that the hospitals were therefore the ones ordering and paying for the goods. We have already ruled on that contention, and King & Boozer is further support for our affirmance of the trial court.
ARA requests that we add to our opinion the fact that the hospitals contracted for ARA's expertise in purchasing foodstuffs and in supervising the preparation of foodnot for its labor. Although the contract between ARA and USA states that "Hospital will provide and pay the salaries of such non-supervisory personnel as are mutually deemed necessary, ...." it also provides that "Contractor shall reimburse Hospital for the direct payroll costs and fringe benefits incurred by Hospital with respect to such non-supervisory employees." The contract further provides that the per-patient-day rate charged by the contractor will include the cost of the hospital's dietary department labor. Therefore ARA ultimately pays for the entire labor cost.
REHEARING DENIED.
BRADLEY and HOLMES, JJ., concur.