497 So.2d 136 (1986)
Ex parte MORRISON FOOD SERVICE OF ALABAMA, INC.
(Re MORRISON FOOD SERVICE OF ALABAMA, INC.
v.
STATE of Alabama).
84-1313.
Supreme Court of Alabama.
June 20, 1986.
Rehearing Denied September 12, 1986.
J.M. Druhan and D. Charles Holtz of Wilkins, Druhan & Ollinger, Mobile, and E.T. Brown, Jr., of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for petitioner.
Charles A. Graddick, Atty. Gen., and B. Frank Loeb, Chief Counsel, and John J. Breckenridge, Asst. Counsel, Dept. of Revenue, and Asst. Attys. Gen., for respondent.
MADDOX, Justice.
This is a sales tax case involving the "withdrawal for use" provision, Code 1975, § 40-23-1(a)(10). Pursuant to this section, Morrison Food Service of Alabama, Inc., was assessed a sales tax of $165,464.90 by the State of Alabama Department of Revenue based on Morrison's withdrawal of food from its inventory to fulfill its obligations under nine contracts with hospitals, nursing homes, and fraternities. Five of these contracts are with organizations which are exempt from paying sales taxes.
*137 Morrison appealed the assessment to the Circuit Court of Mobile County, which granted the State's motion for summary judgment. The Court of Civil Appeals affirmed the trial court's judgment, 497 So.2d 131. We granted certiorari to decide whether Morrison's withdrawal of food from its inventory to satisfy its service contracts is subject to a tax under the withdrawal provision. We hold that this is not a taxable withdrawal and reverse.
The record shows that from February 17, 1960, to September 18, 1975, Morrison entered into nine contracts wherein it agreed to operate food service programs for several hospitals, nursing homes, and fraternities. These contracts were very similar to each other. Morrison agreed to provide food it purchased at wholesale to the institutions, and to provide supervisory personnel to operate the food service programs. Morrison's customers agreed to provide kitchen facilities, equipment, and nonsupervisory personnel. Morrison was reimbursed by its customers for its out-of-pocket expenses and received a management fee.
The State first contends that Morrison is barred by the doctrine of collateral estoppel from contending that it was not using or consuming the meals pursuant to its contracts because in an earlier case in the Circuit Court of Mobile County involving a sales tax assessment under similar contracts, Morrison contended that it was not making a sale to its customers, but was providing a service. The State contends that the trial court in that earlier case accepted this argument, and that Morrison should not be allowed to take a contrary position in this case; however, the record indicates that in the earlier action, Morrison paid a sales tax to the State on the food it provided to the institutions under its contracts, and that the sole issue before the trial court was whether Morrison was subject to a sales tax for the service it provided to the institutions. The trial court correctly decided that these services were not subject to a sales tax.
In this case, Morrison contends that it is not subject to a tax under § 40-23-1(a)(10), as amended, because, at some point, title to the food was transferred to the institutions or their customers. We agree.
The original sales tax law did not contain any withdrawal provisions. The concept first surfaced in 1945 in 38 Op. Att'y Gen. 37 (1945), when the Commissioner of Revenue requested an attorney general's opinion as to whether or not the commissioner had authority to issue the following regulation:
"SALES TAX REGULATION NO. 20
"Where a licensed retail dealer in Alabama purchases tangible personal property for resale but diverts a portion thereof to his own personal use or consumption, without resale, such use or consumption may be determined, at the option of the State Department of Revenue, to be a sale of such property at the regular retail price thereof and such dealer may be required to report such diversion on forms furnished by the State Department of Revenue, as all other retail sales are reported, and to pay the taxes thereon in the same manner as if such property had been sold at retail." (Emphasis added.)
The Attorney General responded that the Commissioner of Revenue had no authority to promulgate such a regulation, stating:
"In view of the definition of the term `sale' set out above, it is my opinion that the personal use or consumption by a licensed retail dealer of part of the tangible personal property purchased by him at wholesale, presumably for resale, is not a sale of such tangible personal property within the meaning of the sales tax statutes, and for this reason is not a part of the `gross proceeds of sales' of such licensed retail dealer and is not subject to sales tax."
38 Op. Att'y Gen. at 40-41. The Attorney General did, however, suggest legislation to correct the abuse. 38 Op. Att'y Gen. at 41.
In 1947, the House voted to amend the sales tax law as follows:

*138 "Said term `gross proceeds of sale' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
"Said term `gross receipts' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
"The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by any one who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon."
1947 House Journal, Reg. Sess., 940-42.
These provisions were enacted. See Ala. Acts 1947, Act No. 305, § 1(1)(f), (h), and (j), at 160, 161-62.
The withdrawal provisions were enacted solely to fill a void not theretofore covered by any existing provision of the Alabama Sales Tax Law, that is, to tax a person who purchased goods at wholesale for the purpose of reselling and who withdrew some of these goods for his own personal and private use or consumption, without transfer of title.
In Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), this Court discussed the subsequent history of the withdrawal provision, as follows:
"The observation that the State at one time did not deem the withdrawal provision to apply to situations where the manufacturer or wholesale purchaser transferred title is reinforced by the fact that the State did not contend in Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392 (1964), that the withdrawal provision applied. In that case, the State merely contended that the sales of gins installed in South Carolina were closed *139 transactions within Alabama and thus were taxable retail sales.
"In State v. T.R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185 (1961), the Court held that the State properly assessed taxes under the withdrawal provision against a lumber mill for withdrawals of its lumber from inventory to use in repairs, improvements, and maintenance of its own facilities. In State v. Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740 (1962), the Court held that the leasing of machines manufactured by Kershaw constituted a taxable withdrawal, noting that Kershaw manufactured the machines for a profit, whether by sale or lease. In State v. Barnes, 45 Ala.App. 522, 233 So.2d 83 (1970), the Court of Civil Appeals held that the withdrawal of phonograph records from stock to place in jukeboxes constituted a withdrawal. But in Drennen Motor Co. v. State, 279 Ala. 383, 185 So.2d 405 (1966), the Court held that designation of cars as demonstrators did not constitute withdrawals, because the cars were available for sale at all times and sold for an average of four and one-half percent less than new cars not used as demonstrators.
"In each of these cases the state sought to impose tax on a withdrawal where no transfer of title took place. Later cases, however, established a pattern of applying the withdrawal provision where manufacturers transferred their products. In Rabren v. United States Steel Corp., 286 Ala. 394, 240 So.2d 358 (1970), the Court cited [State v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315 (1965), and State v. Acker, 45 Ala.App. 574, 233 So.2d 514 (1970)], in affirming that the use of structural steel in bridge construction was a taxable withdrawal `measured by the purchase price paid by [U.S. Steel] for such steel.' 286 Ala. at 397, 240 So.2d at 361. Rabren involved both the manufacturer/contractor and the withdrawal provisions, discussed standard steel and custom-fabricated steel, and taxed both manufactured and purchased steel; therefore, it is less than crystal clear as a precedent for applying the withdrawal provision to items transferred by the taxpayer to another.
"The withdrawal provision was first applied to an objecting taxpayer who transferred the goods to another in Alabama Precast Products, Inc. v. Boswell, 357 So.2d 985 (Ala.1978). Alabama Precast manufactured roof slabs both for sale at retail and for use in `furnish and install' contracts. The State sought to tax, under the withdrawal provision, the value of the raw materials used to manufacture roof slabs for a contract under which Alabama Precast was to furnish and install roof slabs on a building in South Carolina. The parties agreed that the withdrawal provision was the only statute applicable to the facts of the case, and thus the Court did not consider whether the manufacturer/contractor provision was more germane to the transactions. In one sense, of course, the latter provision did not apply, because it relates only to use of property within the state. In another sense, however, the manufacturer/contractor provision might have been deemed to apply, had Alabama Precast so argued, to the extent that Alabama Precast's operations were of the type governed by that provision.
"The Court in Alabama Precast upheld the finding of the Court of Civil Appeals that the transactions were taxable, on the basis that `[t]he raw materials [were] withdrawn ... [and] used by Alabama Precast Products in the performance of a personal obligation under the construction subcontract.' Id., 357 So.2d at 988 (emphasis in original). Thus, the courts established not only the application of the withdrawal provision to goods transferred to others, but also the concept that the requirement that withdrawals must be for `personal and private use' included the `personal obligation' of a `furnish and install' contract. This result also obtained in Home Tile and Equipment Co. v. State, 362 So.2d *140 236 (Ala.Civ.App.), cert. denied, 362 So.2d 239 (Ala.1978).
"The legislature signaled its disapproval of these interpretations of the withdrawal provision by passing Act No. 83-720, 1983 Ala. Acts 1167, effective during the pendency of this appeal. The Act amends several of the definitions in Code 1975, § 40-23-1, chiefly relating to the very issue at hand. The withdrawal provision of § 40-23-1(a)(10) is amended to read, with new material emphasized:
"`The term "sale at retail" or "retail sale" shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the State of Alabama; and such wholesale purchaser shall report and pay the taxes thereon.'
"The Act also states that it `does not constitute a change in, but is declaratory of, the pre-existing law.' Courts must consider subsequent acts passed by the legislature to clarify previously ambiguous provisions. McWhorter v. State Board of Registration for Professional Engineers and Land Surveyors ex rel. Baxley, 359 So.2d 769 (Ala.1978)."
Ex parte Disco Aluminum Products Co., Inc., 455 So.2d at 852-53.
Thus, we held that in light of the legislature's amendment of § 40-23-1(a)(10), Alabama Precast must be overruled insofar as it held that the withdrawal provision could be applied to situations in which title to the goods withdrawn is transferred to another, as is true here.
In the present case, the Court of Civil Appeals followed the reasoning of a previous case decided by that court, ARA Hospital Food Management, Inc. v. State, 437 So.2d 530 (Ala.Civ.App.1983). That decision was founded primarily upon the reasoning of Alabama Precast, and was used by the Court of Civil Appeals in determining "whether a retail sale occurred."
In ARA, ARA prepared meals for the University of South Alabama Medical Center and Brookwood Medical Center pursuant to contracts similar to those in the present case. The State assessed a sales tax against ARA for withdrawing food from its inventory to fulfill those contracts. In upholding the assessment, the Court of Civil Appeals stated:
"The hospitals purchased no tangible personal property; they purchased a service. As the trial court correctly found: `Here, the contractor has undertaken the [hospitals'] responsibility to provide patient food service and stands in the shoes of the [hospitals] ... as the consumer of the food and not as a seller of meals.'"
ARA Hospital Food Management, Inc. v. State, 437 So.2d at 533.
In upholding the assessment against Morrison in this case, the Court of Civil Appeals also relied heavily upon White v. Campbell & Associates, Inc., 473 So.2d 1071 (Ala.Civ.App.1985). In White, the State sought to impose a tax upon the materials Campbell withdrew from its inventory to rubberline pipes to protect the pipes from corrosive materials. The pipes belonged to Campbell's customers. In upholding the assessment of the tax, the Court of Civil Appeals stated that there are two exceptions to § 40-23-1(a)(10):
"(1) When the materials have been previously withdrawn from inventory *141 and have already had sales tax paid on them because of such withdrawal; or
"(2) When the materials enter into and become an ingredient or component part of a product manufactured either for sale or for performance of a contract for improvements or additions to real estate situated outside the state of Alabama."
White v. Campbell & Associates, Inc., 473 So.2d at 1074.
Under this decision, all other withdrawals from inventory are subject to the withdrawal provision. Thus, because Campbell's use of its product did not fit either of these exceptions, the Court of Civil Appeals concluded that:
"Unlike the situation in Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), the title to the materials consumed is not transferred or sold. What Campbell sells to its customers that give it objects to rubberline is not a `manufactured' rubber lining. It sells its capability to produce and apply the rubber lining." (Emphasis original.)
White v. Campbell & Associates, Inc., 473 So.2d at 1075.
We hold that the reasoning of the Court of Civil Appeals in ARA and White is contrary to the intent of the legislature and should not be followed.
Section 40-23-1(a)(10) expressly limits its application to situations where a taxpayer withdraws, uses, or consumes "any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title." (Emphasis added.) Thus, when the taxpayer transfers title to the goods which have been withdrawn, he cannot be taxed under the withdrawal provision.
In this case, Morrison supplied the food for the institutions with which it contracted, and supervised its preparation into meals. Morrison was reimbursed for the cost of the food and its supervisory costs.
We are of the opinion that title to the food was transferred from Morrison at some point as though the food had been purchased from Morrison. Although in the fraternity contracts there were provisions that title to the food held on-site would remain in Morrison, there were other provisions in the fraternity contracts which stated that the amount to be reimbursed for the food would be determined by a monthly food inventory. We hold, therefore, that, based upon the manner in which the contracts with the fraternities and the other institutions were performed, it is implicit that title to the raw food, or at least to the meals, passed from Morrison to others at some point. Clearly, under each contract, the raw food or the prepared meals were consumed by persons other than by employees of Morrison, and we think this makes a material difference, as we shall now show.
Both parties cite this Court's recent case of State v. Morrison Cafeterias Consolidated, Inc., 487 So.2d 898 (Ala.1985), in support of their arguments. There, Morrison Cafeterias was assessed a tax on food it withdrew from its inventory and served to its employees as part of a compensation plan. The employees paid nothing to Morrison Cafeterias for this food. This Court held that because Morrison Cafeterias withdrew the food for its own purposes and did not transfer title to the food, thereby escaping the sales tax, Morrison Cafeterias was subject to the withdrawal provision.
The difference between the present case and Morrison Cafeterias is that here, title to the goods was transferred when the institutions with whom Morrison had contracted paid Morrison for the food. In Morrison Cafeterias, the employees paid nothing for the food. Therefore, Morrison Cafeterias withdrew the food for its own purposes, that of supplying its employees with free food, and was subject to the withdrawal provision for this use of the food.
We, therefore, hold that Morrison is not obligated to pay a tax to the State in this case for the withdrawal of food from its *142 inventory to fulfill its obligations under the contracts it has with the various institutions. ARA and White, which rely upon the reasoning of Alabama Precast, are no longer sound authority insofar as they construe the withdrawal provision, in situations such as are present here, and are overruled to that extent.
For the above stated reasons, the judgment of the Court of Civil Appeals is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., dissents.
STEAGALL, Justice (dissenting):
I respectfully dissent. I agree with the reasoning of the Court of Civil Appeals and the two cases relied upon by that court: ARA Hospital Food Management, Inc. v. State, 437 So.2d 530 (Ala.Civ.App.1983), and White v. Campbell & Assoc., Inc., 473 So.2d 1071 (Ala.Civ.App.1985). In this case, Morrison sells to its customers its ability to purchase large volumes of food at a discount and its expertise in preparing and planning meals for large groups of people. In my opinion, Morrison's withdrawal of food from inventory is not a transfer of title, but is instead incidental to providing a service to its customers. Therefore, Morrison's withdrawal of goods from its inventory constitutes a taxable withdrawal under Code 1975, § 40-23-1(a)(10). I would affirm the judgment of the Court of Civil Appeals.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
On application for rehearing, the State suggests that the original opinion of this Court might be interpreted as holding that Morrison does not owe a tax on the sales price of the raw food sold by it to non-tax-exempt entities. The original opinion merely holds that Morrison is not taxable under the following provision of the sales tax law contained in Code 1975, § 40-23-1(a)(10):
"The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the state of Alabama; and such wholesale purchaser shall report and pay the taxes thereon."
In its brief in opposition to the application for rehearing, Morrison properly concedes that it is taxable on the sales price of the raw food sold to the non-tax-exempt entities because such sales of raw food would still be a sale at retail and taxable under Code 1975, § 40-23-2(1), even though the transaction was not taxable under the above quoted provision of Code 1975, § 40-23-1(a)(10). This is the appropriate interpretation of the original opinion of this Court.
OPINION EXTENDED; APPLICATION FOR REHEARING DENIED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., dissents.