MADDOX, Justice
(concurring, in part; dissenting, in part).
Once again this Court is faced with a skirmish between a taxpayer and the State, as the taxing authority, over the applicability of the withdrawal provisions of Alabama’s Sales Tax Law. I thought that this *1228 Court’s decision in Ex parte Campbell & Associates, Inc., 544 So.2d 971 (Ala.1989), cited and quoted from extensively in the majority opinion, should have settled any questions concerning when and under what circumstances the withdrawal provisions would apply, but apparently it has not.
I write specially in an attempt to try to explain, once again, that much of the confusion that seems to still exist is the result of a basic misunderstanding of the underlying purpose of the withdrawal provisions of the law. As author of the opinions in Ex parte Campbell & Associates, Inc., and Ex parte Morrison Food Service of Alabama, 497 So.2d 136 (Ala.1986), I set out much of the history of the adoption by the Legislature of the withdrawal provisions, and in both cases, I stated what I thought the Legislature intended. I believe that some of the confusion has resulted by the Alabama Department of Revenue’s misreading of the actual holding in the Morrison case, or the Department’s desire to make the withdrawal provisions of the Sales Tax Law applicable even though a “sale at retail” or “retail sale” is to a tax-exempt entity. Because I thought that the Department had misread the actual holding in Morrison, I attempted, in Ex parte Campbell & Associates, to explain the limited holding of the Morrison case, as follows:
“When Morrison was released, the Legislature was meeting in special session. It deleted from the definition section of § 40-23-l(a)(10) the phrase ‘without transfer of title,’ apparently at the urging of the Department because of its belief that this Court had incorrectly interpreted the law in Morrison.
“The Legislature apparently thought that Morrison had broad implications in situations where a person withdrew materials from supplies and used them to perform a contractual obligation and was thereby excused from paying sales tax. That is a misreading of Morrison. Morrison is applicable only to situations where material bought at wholesale is subsequently used to fulfill a contractual obligation to a tax exempt entity. Consequently, when one enters into and fulfills a performance contract with a non-tax exempt entity, title passes and there is a taxable retail sale. So that there would be no room for misapplication of our narrow interpretation of § 40-23-l(a)(10), as it applies to tax exempt entities, we extended the Morrison decision to include our response to the Department of Revenue’s application for rehearing:
“ ‘On application for rehearing, the State suggests that the original opinion of this Court might be interpreted as holding that Morrison does not owe a tax on the sales price of the raw food sold by it to non-tax-exempt-entities. The original opinion merely holds that Morrison is not taxable under ... Code
1975, § 40-23-l(a)(10)_
“ ‘In its brief in opposition to the application for rehearing, Morrison properly concedes that it is taxable on the sales price of the raw food sold to the non-tax-exempt-entities because such sales of raw food would still be a sale at retail and taxable under Code 1975, § 40-23-2(1), even though the transaction was not taxable under the above quoted provisions of Code 1975, § 40-23-l(a)(10). This is the appropriate interpretation of the original opinion of this Court.’
“[Ex parte Morrison Food Service of Alabama,] 497 So.2d at 142.”
Because the confusion continues, and because I authored the opinions in both Morrison and Campbell, I examined the microfilmed copies of the original briefs filed by Morrison’s counsel in the Morrison case, for a deeper understanding of the holding of that case. There, the State, on rehearing, asked this Court to change its decision, but at the same time apparently convinced the Legislature to adopt the 1986 amendment that is the subject of this litigation.
It is obvious that the State, in Morrison, was attempting to apply the withdrawal provisions of the law to food service contracts that Morrison had made with tax exempt entities. In its brief on rehearing, Morrison gives some hint of the controversy that existed in that case between Morrison and the State regarding the proper *1229 interpretation of the withdrawal provisions. Counsel for Morrison accused the State Department of Revenue of using the withdrawal provisions of the law to collect what counsel referred to as the “largest tax possible” by seeking to collect sales tax under the withdrawal provisions of the law, even though the sales were made to tax-exempt entities. My examination of these microfilmed copies of the original briefs show the actual debate that was occurring between the Department of Revenue and the taxpayer in that case, Morrison. In its brief filed in opposition to the State’s application for rehearing, Morrison argued:
“Throughout the long and tortuous journey of this case in the courts the State Department of Revenue has contended solely that Morrison was taxable under the withdrawal provision and Morrison has rejected that contention. This was the sole basis for the assessment presented to this Court.
“This Court recognized this when it stated at the outset of its opinion:
“ ‘We granted certiorari to decide whether Morrison’s withdrawal of food from its inventory to satisfy its service contracts is subject to a tax under the withdrawal provision. We hold that this is not a taxable withdrawal and reverse.’
“The Court then discussed the withdrawal provision and its applicability to the facts of this case. The Court’s reasoning in finding that there was no taxable withdrawal in this case is so absolutely sound that the State does not question such finding in its brief in support of its application for rehearing. Likewise, we will not burden this Court with any further discussion on this point correctly decided by the Court and apparently so admitted by the State.
“There are nine contracts involved in this case. Four are with non-taxable exempt entities (three fraternities and one private hospital), and five are with tax exempt entities (public hospitals or nursing homes). In an attempt to collect tax on food involved in all nine contracts, including food transferred to the five tax exempt entities, the State from the outset has applied only the withdrawal provision and has advanced no other alternative. This position was maintained by the State in its brief and oral argument in this Court.
“The State has had its day in court on this issue. In an attempt to salvage something from its erroneous and sole position, the State now proceeds in its brief in support of its application for rehearing by assuming that since the withdrawal provision is not applicable, this Court also holds that there is no tax due on the food sold by Morrison to the non-tax exempt entities — fraternities and a private hospital. Nothing could be further from the truth and it is illogical to conclude that such is the impact of the Court’s decision in this case. As a matter of fact, since the opinion in this case Morrison has offered to pay the tax on the food sold to the non-tax exempt entities plus the appropriate interest thereon if it would end the controversy. This offer remains open.”
It seems obvious to me, from a rereading of Morrison’s brief in the Morrison case, especially in view of Morrison’s admission in that case, that Morrison owed sales taxes on the contracts it had made with those entities that were not tax exempt and that the Department of Revenue was attempting to collect a sales tax under the withdrawal provisions of the law, regardless of whether the “sale at retail” or “retail sale” was made to a tax-exempt entity or not. I frankly do not believe that the Legislature intended the withdrawal provisions to apply when there is a “sale at retail” or “retail sale” to a tax-exempt person or entity.
After rereading the statute and the cases interpreting the statute, I believe that the principle of law relating to the application of the withdrawal provisions could be stated, as follows: “Taxpayer, if you purchased tangible property at wholesale, and if you sell it, you must collect the tax from the consumer, unless the consumer is exempt from the payment of a sales tax; if you use and consume the property purchased at wholesale yourself, then you owe a sales tax; if you use the property in *1230 performing a contract, you owe the tax, unless, of course, the user or consumer is exempt from the payment of sales tax; if the property enters into and becomes an ingredient or component of tangible personal property or products manufactured or compounded for sale, and not for the personal and private use or consumption of the person who withdraws, uses or consumes it, the withdrawal provisions would not apply, because the sales tax would be owed by the person or entity who sells the product that was manufactured or compounded for sale.”
The majority opinion quotes extensively from the Campbell opinion, and it correctly interprets the withdrawal provisions of the law, as applied to the facts of this case. Therefore, I concur in the holding that the withdrawal provisions of the law are applicable here. I cannot agree, however, that the decision should apply only prospectively. I believe that the law was clear at the time of the taxable event, and I would not excuse this taxpayer from having to pay the tax.